IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| Raymond Stafford, | |
| *On behalf of himself and those similarly situated*, | Case No. |
| Plaintiff, | Judge |
| | Magistrate Judge |
| v. | |
| Debics LLC; Christopher Chukwukelu; John Doe 1–10; Doe Corporation 1–10 | Jury Demand Endorsed Hereon |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

### Introduction

1.      Raymond Stafford, on behalf of himself and all similarly situated individuals, brings this action against Defendants Debics LLC; Christopher Chukwukelu; John Doe 1–10; Doe Corporation 1–10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA") and unjust enrichment.

2.      Defendants operate at least one Domino's Pizza franchise in Texas (the "Defendants' Domino's store").

3.      Defendants repeatedly and willfully violated the Fair Labor Standards Act by failing to

adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage for all hours worked.

4.      Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA.

5.      All delivery drivers at the Defendants' Domino's store, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for expenses.

6.      Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers nationwide who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA by Defendants.

7.      Plaintiff also brings this action on behalf of himself and current and former delivery drivers in Texas, pursuant to Federal Rule of Civil Procedure 23, for unjust enrichment.

### Jurisdiction and Venue

8.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

9.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

### Parties

#### Plaintiff

#### Raymond Stafford

10.     Plaintiff Raymond Stafford is a resident of Texas and, at all material times herein, Plaintiff works within the boundaries of Northern District of Texas.

11.      Plaintiff is an "employee" of all of the Defendants as defined in the FLSA.

12.      Plaintiff has given written consent to join this action.

**Defendants**

**Debics LLC**

13.      Defendant Debics LLC is a domestic limited liability company authorized to do business under the laws of Texas.

14.      Debics LLC owns and operates at least one Domino's Pizza franchise store in Texas.

15.      Debics LLC is owned by Christopher Chukwukelu.

16.      Debics LLC is operated by Christopher Chukwukelu.

17.      Debics LLC is the entity name on Plaintiff's paystubs.

18.      Debics LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

19.      Debics LLC applies, or causes to be applied, substantially the same employment policies, practices, and procedures to all delivery drivers at its location, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

20.      Debics LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

21.      At all relevant times, Debics LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

22.      Debics LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

3

23.     At all relevant times, Debics LLC has been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

24.     Debics LLC's gross revenue exceeds $500,000 per year.

**Christopher Chukwukelu**

25.     Defendant Christopher Chukwukelu is the owner of Defendants' Domino's store.

26.     Christopher Chukwukelu is a Domino's Pizza franchisee.

27.     Upon information and belief, Christopher Chukwukelu has entered into a franchise agreement with Domino's Pizza relating to Defendants' Domino's store.

28.     Christopher Chukwukelu is the operator of Defendants' Domino's store.

29.     Christopher Chukwukelu is individually liable to the delivery drivers at Defendants' Domino's store under the definitions of "employer" set forth in the FLSA because he owns and operates Defendants' Domino's store, serves as the owner of the Defendants' Domino's store, ultimately controls significant aspects of Defendants' Domino's store's day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

30.     At all relevant times, by virtue of his role as Owner of the Defendants' Domino's store, Christopher Chukwukelu has had financial control over the operations at the Defendants' Domino's store.

31.     At all relevant times, by virtue of his role as Owner of the Defendants' Domino's store, Christopher Chukwukelu has had a role in significant aspects of the Defendants' Domino's store's day to day operations.

32.     At all relevant times, by virtue of his role as Owner of the Defendants' Domino's store, Christopher Chukwukelu has had control over the Defendants' Domino's store's pay policies.

33.     At all relevant times, by virtue of his role as Owner of the Defendants' Domino's store, Christopher Chukwukelu has had power over personnel and payroll decisions at the Defendants' Domino's store, including but not limited to influence over delivery driver pay.

34.     At all relevant times, by virtue of his role as Owner of the Defendants' Domino's store, Christopher Chukwukelu has had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Domino's store.

35.     At all relevant times, by virtue of his role as Owner of the Defendants' Domino's store, Christopher Chukwukelu has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Domino's store.

36.     At all relevant times, by virtue of his role as Owner of the Defendants' Domino's store, Christopher Chukwukelu has had the power to transfer the assets and liabilities of the Defendant Domino's store.

37.     At all relevant times, by virtue of his role as Owner of the Defendants' Domino's store, Christopher Chukwukelu has had the power to declare bankruptcy on behalf of the Defendant Domino's store.

38.     At all relevant times, by virtue of his role as Owner of the Defendants' Domino's store, Christopher Chukwukelu has had the power to enter into contracts on behalf of the Defendants' Domino's store.

39.     At all relevant times, by virtue of his role as Owner of the Defendants' Domino's store, Christopher Chukwukelu has had the power to close, shut down, and/or sell the Defendants' Domino's store.

40.     At all relevant times, by virtue of his role as Owner of the Defendants' Domino's store,

Christopher Chukwukelu has authority over the overall direction of Defendants' Domino's store and is responsible for its operations.

41.     The Defendants' Domino's store functions for Christopher Chukwukelu's profit.

42.     Christopher Chukwukelu has influence over how the Defendants' Domino's store can run more profitably and efficiently.

**Doe Corporation 1–10**

43.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Domino's store, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's store as that term is defined by the FLSA.

44.     Upon information and belief, Christopher Chukwukelu owns and operates, in whole or in part, a number of other entities that make up part of the Defendants' Domino's store.

45.     Upon information and belief, RPC Pizza, Inc. d/b/a Domino's Pizza, might also qualify as an "employer" of Plaintiff and the delivery drivers at the Defendants' Domino's store as that term is defined by the FLSA.

46.     Upon information and belief, the franchisor, Domino's Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Domino's store.

47.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1–10**

48.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's store as that term is

defined by the FLSA.

49.     Upon information and belief, Christopher Chukwukelu has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's store as that term is defined by the FLSA.

50.     Upon information and belief, Richard Cunningham is one such additional individual who may also qualify as an "employer" of Plaintiff and the delivery drivers at the Defendants' Domino's store as that term is defined by the FLSA.

51.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Facts**

**Class-wide Factual Allegations**

52.     During all relevant times, Defendants have operated the Defendants' Domino's store.

53.     The primary function of the Defendants' Domino's store is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

54.     Defendants' Domino's store employs delivery drivers.

55.     Plaintiff and the similarly situated persons that Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the Defendants' Domino's store.

56.     All delivery drivers employed at the Defendants' Domino's store over the last three years have had essentially the same job duties—to deliver pizza and other food items to customers.

57.     Drivers at the Defendants' Domino's store work "dual jobs".

7

58.    At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they work while completing deliveries.

59.    At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage or slightly above minimum wage for the hours they work inside the restaurant.

60.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

61.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cellphone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

62.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and incur cellphone and data charges all for the primary benefit of Defendants.

63.    Defendants require delivery drivers at Defendants' Domino's store to provide cellphones to use while completing deliveries for Defendants.

64.    Defendants require delivery drivers to maintain and pay for operable cellphones to use in delivering Defendants' pizza and other food items.

65.    The Defendants' Domino's store does not reimburse the delivery drivers' cellphone expenses.

8

66.    The Defendants' Domino's store does not track or record the delivery drivers' cellphone expenses.

67.    Defendants reimburse delivery drivers' automobile expenses based on a set amount for each delivery they complete.

68.    Defendants' Domino's store does not track or record the delivery drivers' actual automobile expenses.

69.    Defendants' Domino's store does not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

70.    Defendants do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers work for Defendants.

71.    Defendants do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers work for Defendants.

72.    Defendants do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

73.    Defendants do not collect receipts of delivery drivers' automobile registration costs.

74.    Defendants do not collect receipts of delivery drivers' automobile financing or purchase costs.

75.    Defendants do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Domino's store.

76.    Defendants' Domino's store does not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

77.     Defendants' Domino's store does not reimburse their delivery drivers for the actual expenses delivery drivers incur.

78.     Defendants' Domino's store does not reimburse their delivery drivers' automobile expenses at the IRS standard business mileage rate.

79.     Defendants' Domino's store does not even reasonably approximate the delivery drivers' automobile expenses.

80.     Defendants' Domino's store' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

81.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

        a.      2020: 57.5 cents/mile
        b.      2021: 56 cents/mile
        c.      2022: 58.5 cents/mile
        d.      2022: 62.5 cents/mile

82.     The delivery drivers at the Defendants' Domino's store have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cellphone and data charges.

83.     The delivery drivers at Defendants' Defendants' Domino's store advance a business expense, interest free, to Defendants when they provide cars to use at work.

84.     Defendants benefit from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

85.     Defendants benefit from the delivery drivers storing their vehicles when they are not being used to complete deliveries for Defendants.

86.    Defendants benefit from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

87.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA.

88.    At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Defendants' Domino's store.

89.    All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

90.    Regardless of the precise amount of the reimbursements paid at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

91.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

92.    Defendants have willfully failed to pay federal minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Domino's store.

93.    Defendants' policy of under-reimbursement unjustly enriches them at the expense of their delivery drivers. Under-reimbursing delivery drivers allows Defendants to shift business expenses onto their employees, which confers various benefits on Defendants beyond and in excess of the direct savings from violating wage laws.

94.    All of Defendants' delivery drivers conferred a benefit on Defendants by providing cellphones to use when delivering pizza and other food items for Defendants.

95.    All of Defendants' delivery drivers conferred a benefit on Defendants by providing vehicles to deliver pizza and other food items for Defendants.

**Plaintiff's Individual Factual Allegations**

96.    Plaintiff has worked for Defendants as a pizza delivery driver expert at the Defendants' Domino's store since December 2021.

97.    Plaintiff works dual jobs—one inside the store, and one outside the store.

98.    Plaintiff delivers pizza and other food items to Defendants' customers' homes and businesses.

99.    When he is not making deliveries, Plaintiff works inside the restaurant, completing tasks such as taking orders, doing dishes, sweeping, cashing customers out, and/or doing other tasks necessary for the operation of the restaurant.

100.    Plaintiff is required to use his own car to deliver pizzas.

101.    Plaintiff is required to use his own cellphone when delivering pizzas.

102.    Plaintiff makes $8.25 per hour for all hours worked.

103.    Plaintiff is reimbursed per delivery while completing deliveries for Defendants.

104.    When Plaintiff started working for Defendants, he made $1.50 per delivery while he

completed deliveries for Defendants.

105.    Plaintiff now makes $1.75 per delivery while he completes deliveries for Defendants.

106.    Plaintiff is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

107.    Plaintiff is required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

108.    Plaintiff is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cellphone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

109.    Plaintiff purchases gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incur cellphone and data charges all for the primary benefit of Defendants.

110.    Defendants do not track the actual expenses incurred by Plaintiff.

111.    Defendants do not ask Plaintiff to provide receipts of the expenses he incurs while delivering pizzas and other food items for Defendants.

112.    Defendants' Domino's store does not collect receipts from Plaintiff related to the expenses he incurs while completing deliveries.

113.    Defendants do not collect receipts of Plaintiff's gasoline purchases during weeks when he works for Defendants.

114.    Defendants do not collect receipts of Plaintiff's automobile maintenance, repair, and parts purchased or paid for during weeks when he works for Defendants.

115.     Defendants do not collect receipts of Plaintiff's monthly or annual automobile insurance costs.

116.     Defendants do not collect receipts of Plaintiff's automobile registration costs.

117.     Defendants do not collect receipts of Plaintiff's automobile financing or purchase costs.

118.     Defendants do not collect any other receipts from Plaintiff related to the automobile expenses he incurs as a delivery driver at Defendants' Domino's store.

119.     Defendants do not track the cellphone expenses incurred by Plaintiff.

120.     Defendants do not ask Plaintiff to provide records of cellphone expenses he incurs while delivering pizzas for Defendants.

121.     Defendants do not collect receipts of Plaintiff's cellphone data plan expenses.

122.     Defendants do not reimburse Plaintiff for his cellphone expenses.

123.     Defendants do not reimburse Plaintiff based on his actual delivery-related expenses.

124.     Plaintiff is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

125.     During all relevant times, Defendants have failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

126.     Plaintiff regularly makes approximately 2 deliveries per hour during the hours he works as a delivery driver.

127.     Plaintiff regularly drove approximately 8.5 miles round trip per delivery.

128.     In early 2022, for example, the IRS business mileage reimbursement was $.585 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas.

http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. If Plaintiff completed a delivery order that cost the customer $20, and required him to drive 10 miles, the result would be that Plaintiff is reimbursed $1.75 for the delivery, which amounts to $.175 per mile. Considering Plaintiff estimates an average of about 8.5 miles per delivery), Defendants under-reimburse him by about $3.22 per delivery (8.5 miles × $.585 per mile = $4.97) ($4.97 - $1.75), and $6.44 per hour ($3.22 × 2 deliveries per hour).

129.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

130.    Defendants have been unjustly enriched by Plaintiff in that he uses his own vehicle and incurs vehicle-related expenses for Defendants' benefit.

131.    Defendants have been unjustly enriched by Plaintiff in that he uses his own cellphone and incurs cellphone-related expenses for Defendants' benefit.

### Collective Action Allegations

132.    Plaintiff brings the First and Second Counts on behalf of himself and all similarly situated current and former delivery drivers employed at the Defendants' Domino's store owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

133.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse

15

delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

134.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

135.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

136.    Defendants are aware or should have been aware that employees paid at an hourly rate are entitled to overtime at time-and-a-half their regular hourly rate, as determined on a week-by-week bases, for hours worked in excess of forty per week.

137.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

138.    The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

139.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**Class Action Allegations**

140.    Plaintiff brings the Third Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Domino's store in the State of Texas between the date two years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Unjust Enrichment Class").

141.    Excluded from the Rule 23 Unjust Enrichment Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit

timely and otherwise proper requests for exclusion from the Rule 23 Unjust Enrichment Class.

142.    The number and identity of the Rule 23 Unjust Enrichment Class members are ascertainable from Defendants' records.

143.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Unjust Enrichment Class member and the benefits conferred by the Rule 23 Unjust Enrichment Class members and realized by Defendants are determinable from Defendants' records.

144.    For the purpose of notice and other purposes related to this action, the Rule 23 Unjust Enrichment Class members' names and contact information are readily available from Defendants.

145.    Notice can be provided by means permissible under Rule 23 for the Rule 23 Unjust Enrichment Class members.

146.    The Rule 23 Unjust Enrichment Class members are so numerous that joinder of all members is impracticable.

147.    The disposition of the Rule 23 Unjust Enrichment Class members' claims as a class will benefit the parties and the Court.

148.    Upon information and belief, there are more than 40 Rule 23 Unjust Enrichment Class members.

149.    Plaintiff's claims are typical of those claims which could be alleged by any class member in the Rule 23 Unjust Enrichment Class, and the relief sought is typical of the relief which would be sought by a Rule 23 Unjust Enrichment Class member in separate actions.

150.    Plaintiff and the Rule 23 Unjust Enrichment Class members have unjustly enriched Defendants in the same way—by providing automobiles for use in their business at no cost to

Defendants.

151.    Plaintiff and the Rule 23 Unjust Enrichment Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

152.    By seeking to represent the interests of the Rule 23 Unjust Enrichment Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

153.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Unjust Enrichment Class and has no interests antagonistic to the Rule 23 Unjust Enrichment Class.

154.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

155.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Unjust Enrichment Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Unjust Enrichment Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public

resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Unjust Enrichment Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Unjust Enrichment Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

156.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

157.    Common questions of law and fact exist as to the Rule 23 Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Rule 23 Unjust Enrichment Class members individually and include, but are not limited to:

    a.    Whether Plaintiff and the Rule 23 Class members were subject to a common expense reimbursement policy;

    b.    Whether Plaintiff and the Rule 23 Unjust Enrichment Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

    c.    Whether Plaintiff and the Rule 23 Unjust Enrichment Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants;

    d.    Whether Plaintiff and the Rule 23 Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    e.    Whether Defendants collected and maintained records of Plaintiff and the Rule 23 Unjust Enrichment Class members' actual vehicle expenses;

    f.    Whether Defendants reimbursed Plaintiff and the Rule 23 Unjust

Enrichment Class members for their actual expenses;

g.    Whether Defendants reimbursed Plaintiff and the Rule 23 Unjust Enrichment Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

h.    Whether Defendants reimbursed Plaintiff and the Rule 23 Unjust Enrichment Class members based on a reasonable approximation of the expenses they incurred;

i.    Whether Defendants properly reimbursed Plaintiff and the Rule 23 Unjust Enrichment Class members;

j.    Whether Plaintiff and the Rule 23 Unjust Enrichment Class conferred a benefit on Defendants that Defendants were aware of;

k.    Whether Defendants accepted the benefits conferred on them by Plaintiff and the Rule 23 Unjust Enrichment Class;

l.    Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff and the Rule 23 Unjust Enrichment Class without compensating for it;

m.    The nature and extent of class-wide injury and the measure of damages for those injuries.

158.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Unjust Enrichment Class, Plaintiff will request payment of a service award upon resolution of this action.

### Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

159.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

160.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled

to receive no less than minimum wage for all hours worked.

161.    Defendants pay Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

162.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

163.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

164.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

165.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Overtime Wages – Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

166.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

167.    Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

168.    Because Defendants require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants do not pay Plaintiff and the FLSA Collective at least one-and-a-half times their regular rate for time worked in excess of forty hours per workweek.

169.    Plaintiff and the FLSA Collective are paid on an hourly basis.

170.    By not paying Plaintiff and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

171.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 3**
**Unjust Enrichment**
**(On Behalf of Plaintiff and Rule 23 Unjust Enrichment Class)**

172.    The Rule 23 Unjust Enrichment Class members at the Defendants' Domino's store have conferred a benefit on Defendants by using their own cars and cellphones to perform work for Defendants.

173.    Defendants are aware of and have accepted the benefit conferred on them by Rule 23 Unjust Enrichment Class members.

174.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Rule 23 Unjust Enrichment Class members without commensurate compensation.

175.    Plaintiff and the Rule 23 Unjust Enrichment Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the 2 years preceding the filing of this complaint.

**WHEREFORE**, Plaintiff Raymond Stafford prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and

appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.    Designation of Plaintiff as representative of the Rule 23 Unjust Enrichment Class, and counsel of record as Class Counsel for the Class.

E.    Liquidated damages under the FLSA

F.    An award of restitution as a result of unjust enrichment to the Rule 23 Unjust Enrichment Class.

G.    An award of prejudgment and post-judgment interest.

H.    An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.    Such other legal and equitable relief as the Court deems appropriate.


Respectfully submitted,

*/s/ Matthew R. Scott*
Matthew R. Scott
Texas Bar No. 00794613
matt@mattscottlaw.com
SCOTT LAW FIRM PLLC
900 Jackson Street, Suite 550
Dallas, Texas 75202
214-965-9675 / 214-965-9680 (Facsimile)


and

Andrew R. Biller (Ohio Bar No. 0081452)

Andrew P. Kimble (Ohio Bar No. 0093172)
Riley E. Kane (Ohio Bar No. 0100141)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*abiller@billerkimble.com*
*rkane@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Matthew R. Scott
Matthew R Scott