IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| Raymond Stafford,<br><br>*On behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Debics LLC, *et al.*,<br><br>Defendants. | Case No. 3:22-cv-02106-B<br><br>Judge Jane J. Boyle |

PLAINTIFF'S UNOPPOSED MOTION TO APPROVE FLSA SETTLEMENT

Plaintiff Raymond Stafford asks that the Court grant approval of the parties' Settlement Agreement, attached as Exhibit 1, order the parties to carry out the terms of the Settlement Agreement, and dismiss the case with prejudice. The Settlement Agreement resolves the opt-in Plaintiffs' claims for mileage under-reimbursement and overtime compensation under the Fair Labor Standards Act and for unjust enrichment under Texas law, as well as Plaintiff Stafford's individual claim for retaliation under the Fair Labor Standards Act.

Respectfully submitted,

/s/ *Andrew Biller*
Andrew R. Biller (*pro hac vice*)
Andrew P. Kimble (*pro hac vice*)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513)-202-0710

Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*rkane@billerkimble.com*

www.billerkimble.com

Memorandum in Support of Plaintiff's Unopposed Motion For Approval of Settlement

1. **Introduction**

The parties have entered into a Settlement Agreement to resolve the FLSA claims in this case, as well as a Supplemental Settlement Agreement to resolve Mr. Stafford's individual claim for retaliation. The parties seek an order (1) granting final approval of the Settlement Agreement as fair, reasonable, and adequate; (2) approving the requested award of attorney's fees and costs; (3) approving the service award; (4) dismissing the action with prejudice; and (5) ordering the parties to carry out the remaining terms of the Settlement Agreement. Defendants do not oppose this request.

2. **Standard of Approval for an FLSA Settlement.**

The parties seek court approval of the FLSA settlement in this case. *See Alden v. Black Gold Rental Tools, Inc.*, 2019 U.S. Dist. LEXIS 212457, 2019 WL 6702693 at *1 (S.D. Tex. Nov. 21, 2019) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). A court may approve a settlement "in an employee FLSA suit [if it reflects] a reasonable compromise over issues . . . that are actually in dispute." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d at 1354. Ultimately, the Court must determine: "(1) whether a bona fide dispute exists between the parties; (2) whether the settlement agreement is a fair and reasonable resolution of the dispute; and (3) whether the requested attorney's fees are fair and reasonable." *Shaw v. CAS, Inc.*, 2018 U.S. Dist. LEXIS 136394, 2018 WL 3621050, at *1 (S.D. Tex. Jan. 31, 2018).

In determining whether a settlement is fair, adequate, and reasonable, courts also look to the following six factors helpful to the consideration of a settlement of FLSA claims:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Chano et al v. City of Corpus Christi*, 2019 U.S. Dist. LEXIS 153143, 2019 WL 4247767 at *2-3 (S.D. Tex. July 11, 2019) (citation omitted); *Shaw*, 2018 U.S. Dist. LEXIS 136394, 2018 WL 3621050 at *2; *Collins*, 568 F. Supp. 2d at 721-22 (E.D. La. 2008). As described below, the proposed settlement meets this standard.

### 3. Background of the Lawsuit and Claims

Plaintiff Raymond Stafford delivered food for Defendants' Domino's franchise store in Texas. On September 22, 2022, Plaintiff filed this lawsuit on behalf of himself and similarly situated delivery drivers in Texas. *See* Doc. 1. Plaintiff's Complaint alleges that that Defendants, operators of a Domino's franchise, required their minimum wage delivery drivers to provide their own vehicles to deliver the Defendants' pizza and other food and drinks, and failed to adequately reimburse the drivers for their vehicle expenses. Plaintiff claims that the drivers' cars are "tools of the trade," 29 CFR § 531.35, and that the Defendants' failure to adequately reimburse for the drivers' vehicle expenses triggered a minimum wage violation. *See, e.g., Waters v. Pizza to You, LLC*, 538 F.Supp.3d 785 (S.D. Ohio 2021); *contra Bradford v. Team Pizza, Inc.*, 568 F. Supp. 3d 877, 879 (S.D. Ohio 2021) (citing 29 C.F.R. § 778.217).

Plaintiff's Complaint also asserts a claim that by using their own cars to deliver food conferred a benefit to Defendants that Defendants were aware of and benefited from, and that it

4

would be unjust to allow Defendants to retain the benefits conferred to them without commensurate compensation.

Defendants denied, and continue to deny, Plaintiff's allegations and any liability.

The parties jointly moved the Court to approve a stipulated form of notice of collective action and to stay the case and to effectuate notice to similarly situated delivery drivers, which the Court granted. See Docs. 24 and 27. Notice was sent to all similarly situated delivery drivers and 4 additional delivery drivers (collectively with Mr. Stafford, "Collective Members") opted-in to the case.

On December 14, 2022, Plaintiff filed his Motion for Leave to File First Amended Complaint to Add FLSA Retaliation Allegations after Plaintiff was fired from his job at Defendants' Domino's Pizza store. Defendants deny, and continue to deny, that Mr. Stafford was fired in retaliation for asserting claims under the Fair Labor Standards Act.

## 4. Summary of Settlement Terms

The Settlement Agreement creates a settlement fund of $24,298.00 to Plaintiffs for a release of the wage and hour claims asserted in the Complaint. *See* Exhibit 1. Under the terms of the Agreement, Mr. Stafford will receive a $1,000 payment as a service award, subject to Court approval. The remainder will be distributed to the Collective Members who filed a consent to join form with the court on or before the date the parties move for approval of the settlement. The net settlement fund will be distributed on a pro-rata basis based on the miles they drove on behalf of the Defendants. Defendants also agree to pay Plaintiff's attorneys' fees in the amount of $14,500.00 and advanced expenses in the amount of $1,202.00, subject to Court approval.

The Parties negotiated all the terms and conditions of the settlement agreement at arms' length with the assistance of counsel experienced in wage and hour litigation over the course of several months. Considering the length of time it would take to reach a judgment, the hotly contested issues that could reduce the drivers' damages (potentially to zero), and the procedural hurdles to maintaining this case as a collective action, this is an excellent result for the Collective Members.

In addition to the Settlement Agreement pertaining to the Collective Member's alleged unpaid wages and damages, the Parties negotiated a Supplemental Settlement Agreement pertaining to Mr. Stafford's individual claim for FLSA retaliation.

**5.    There is a bona fide dispute as to the underlying claims.**

The primary focus of the Court's inquiry is on ensuring that an employer does not take advantage of its employees in settling their claim for wages. *See Jasso v. HC Carriers*, 2022 U.S. Dist. LEXIS 207043 at *4 (S.D. Tex. October 19, 2022). Plaintiff will describe the facts and law underlying his primary claims to demonstrate that the parties are sufficiently "adversarial" to ensure that the Collective Members have not been coerced into waiving their rights. *Id*.

Both Parties' counsel have been litigating this issue in courts across the country for years. Plaintiff contends that, because Defendants did not collect and maintain records of and reimburse the drivers' actual vehicle expenses, Defendants were required to reimburse at the IRS standard business mileage rate. *See, e.g.,* Department of Labor Field Operations Handbook, 30c15; *Waters*, 538 F.Supp.3d 785; Hatmaker v. PJ Ohio, LLC, No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 191790, 2019 WL 5725043 (S.D. Ohio Nov. 5, 2019); *Parker v. Battle Creek Pizza, Inc.*, 600 F. Supp. 3d 809, 814 (W.D.Mich.2022), *petition for appeal granted by In re Battle Creek Pizza, Inc.*, 2022 U.S.

App. LEXIS 34523 (Dec. 14, 2022). Defendants, on the other hand, argue that employers are permitted to meet their minimum wage obligation by reasonably approximating the drivers' vehicle expenses. *See* DOL Opinion Letter, FLSA2020-12; *Kennedy v. Mountainside Pizza, Inc.*, 2020 U.S. Dist. LEXIS 154792, 2020 WL 5076756 (D. Colo., Aug. 26, 2020); *Blose v. JARINC, Ltd.*, 2020 U.S. Dist. LEXIS 167131 (D. Colo. Sept. 14, 2020); *Bradford v. Team Pizza, Inc.*, 568 F. Supp. 3d 877, 879 (S.D. Ohio 2021), *petition for appeal granted by In re Bradford*, 2022 U.S. App. LEXIS 17739 (6th Cir., June 27, 2022). No Circuit Court has addressed this question. As of July 23, 2023, the same counsel that represent the parties in this case have fully briefed an appeal of this issue to the Sixth Circuit. *See In re Bradford*, No. 22-0304 (6th Cir.).

In this case, if this issue was decided in Plaintiff's favor, the calculation of damages would be a relatively straightforward math equation, though the Parties would likely litigate vigorously over other issues, including whether collective action certification is appropriate, whether liquidated damages should be awarded, and whether the 2- or 3-year statute of limitations under the FLSA applied. If the issue was decided in Defendants' favor, the case would become a fact-intensive battle of experts, likely requiring a trial. The uncertainty presented by the primary legal question in the case favors approval of the Parties' proposed settlement.

For Mr. Stafford's claim for FLSA retaliation, the parties' offered differing accounts of the factual circumstances surrounding Mr. Stafford's termination of employment. If Plaintiff prevailed, he would have sought the payment of wages lost and an additional amount as liquidated damages under 29 U.S.C. § 215(a)(3). If Defendants prevailed, Mr. Stafford would recover nothing.

**6.    The settlement provides for a fair resolution of disputed claims.**

Plaintiff estimates that the Collective Members' unpaid wages, if calculated at the IRS rate, are approximately $19,696.24. In addition, Plaintiff would have sought an additional 1× unpaid wages as FLSA liquidated damages, bringing the total possible damages to $39,392.47. The settlement fund here provides each Collective Member with 100% of their claimed unpaid wages plus an additional 18% as liquidated damages. Given the uncertainties regarding what legal standard would apply to the case, the various procedural and other legal hurdles Plaintiff would have to overcome to achieve maximum damages, and the likely length, expense, and uncertainty of contested litigation, this is an excellent result for the Collective Members.

Plaintiff estimates that the damages he incurred related to his individual claim for FLSA retaliation would be approximately $2,000 each month that he remained unemployed. However, if he did not prevail in demonstrating that his termination was a result of retaliation, he would not be entitled to recover damages. The settlement here provides for 50% of his alleged unpaid wages resulting from his termination at the time the parties reached an agreement to settle.

7. **Other Factors Considered by this and other Courts.**

Each of the other helpful factors considered by courts evaluating the fairness, adequacy, and reasonableness of a settlement of FLSA claims support approval.

*Whether the Settlement was a product of fraud or collusion.* As discussed above, this case was litigated by counsel on both sides that have been litigating this issue in courts across the country for years. The merits of Plaintiff's wage and hour and FLSA retaliation claim were hotly contested throughout the litigation. This factor weighs in favor of approving the settlement.

*The complexity, expense, and likely duration of the litigation.* Wage and hour class and collective actions are inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, No.

8

3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). The primary legal question in this case has been litigated for years and there is currently no consensus among federal courts. Compare *Waters*, 538 F.Supp.3d 785 with *Bradford v. Team Pizza, Inc.*, 568 F. Supp. 3d 877, 879 (S.D. Ohio 2021), *petition for appeal granted by In re Bradford*, 2022 U.S. App. LEXIS 17739 (6th Cir., June 27, 2022). If this case were contested, it would take years to litigate. For example, Plaintiff's counsel currently has two pizza delivery driver under-reimbursement cases that have been pending since 2017, and neither have a trial date set. *See Edwards v. PJ Ops Idaho, LLC*, No. 1:17-cv-283 (D. Id.) (FLSA collective action and Rule 23 class certification has been granted); *Thomas v. Papa John's International, Inc.,* No. 1:17-cv-411 (S.D.Ohio) (FLSA collective action certification has been granted and plaintiff's motion for Rule 23 class certification is pending). But for the Parties' settlement, this case could well follow a similar path, and would likely require tens of thousands of dollars, or more, in expenses to litigate.

*The stage of the proceedings and the amount of discovery completed.* This case settled at a relatively early stage. However, all of the discovery that was necessary to evaluate damages, and the strengths and weaknesses of the Parties' primary argument, was produced following the conclusion of the opt-in period. Defendants produced data related to the Collective Members' employment dating back three years prior to the date of each individual opting-in, including the number of miles each individual drove for the company, the amount of mileage reimbursement paid to each driver, and data reflecting each drivers' hourly wages. From the data produced, Plaintiffs' counsel was able to calculate the potential damages under the three-year statute of limitations at the IRS standard business mileage rate. Plaintiffs' counsel was also able to evaluate

9

certain claimed defenses, including any offset achieved by paying the Collective Members at a rate above the minimum wage.

In under-reimbursement delivery driver cases, discovery focuses "mainly on the records Defendants are required to keep under the FLSA and Ohio law." *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2020 U.S. Dist. LEXIS 39715, 2020 WL 1129325, at *3 (S.D. Ohio Mar. 6, 2020); *but see Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139, 1149-1153 (holding that employers do not violate recordkeeping requirements by failing to track or maintain records of employee's actual expenses). This exchange was sufficient to allow the Parties to negotiate an arm's length settlement. *See, e.g., Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 U.S. Dist. LEXIS 11019, at *7 (S.D. Ohio Jan. 17, 2019) (finding after a similar data exchange that "this exchange of information is sufficient to inform settlement negotiations by experienced counsel").

As for Mr. Stafford's claim for FLSA retaliation, the parties exchanged testimony and sworn declarations regarding Plaintiff's employment following the initiation of this lawsuit and the circumstances surrounding his termination. The accounts of witnesses provided adequate information to evaluate the strengths of the claim and likelihood of success on the merits to negotiate a fair resolution.

*The factual and legal obstacles to prevailing on the merits*. As detailed above, this case presents a legal question that has not been addressed by the Fifth Circuit: how to value, for purposes of determining minimum wage compliance, the vehicle expenses incurred by delivery drivers using their personal vehicles in the course of their employment.

The extent of the potential damages at issue (if any) is based on what the Court, or jury, ultimately determines to be the proper method of reimbursement for employees who use their

vehicles for the employer's benefit. Plaintiff alleges that the proper reimbursement rate is the IRS standard business mileage rate. *See, e.g., Hatmaker*, 2019 U.S. Dist. LEXIS 191790, *7-9, 17-18; *Parker*, 2022 U.S. Dist. LEXIS 76990, *11. If Plaintiff wins on this issue, the damages for FLSA unpaid wages could be up to approximately $39,392.47 (assuming liquidated damages were also awarded). Defendants allege the proper reimbursement rate is a "reasonable approximation" of the vehicle expenses. *See, e.g., Bradford*, 568 F. Supp. 3d at 882-83. If Defendants win on this issue, they could then argue that what they reimbursed was a "reasonable approximation." If this argument is successful, it could reduce the damages to zero; *i.e.*, Defendants did not violate the law at all. Alternatively, the Court, or a jury, could find that a rate higher than what Defendants paid is appropriate. In that case, the damages would be calculated as the difference between the reimbursement rate paid and the "reasonable" rate arrived at by the Court or jury, to the extent such amount reduced the employee's wages below the minimum wage.

As for Mr. Stafford's individual claim for retaliation, the facts surrounding his termination were disputed. But for the Supplemental Settlement Agreement, and assuming the claim was not dismissed at an earlier stage, the claim would have required a jury determination to resolve the dispute.

*The possible range of recovery and the certainty of damages*. The range of recovery in this case is between zero and $39,392.47, but the damages do not include attorneys' fees and costs. If the Plaintiffs prevailed in demonstrating that Defendants' pay practices violated the FLSA, they would be entitled to seek recovery of their attorneys' fees and costs. Considering that, at least under the Defendants' reimbursement theory, the case could ultimately require significant discovery, a trial, and a battle of the experts, the attorneys' fees and costs is an important

consideration weighing in favor of an early resolution of the claims asserted. This factor supports approval.

*The respective opinions of the participants.* Each of the Collective Members' releasing their claims as a part of this settlement opted-in to the case. (Doc. 35-37). Mr. Stafford, individually and on behalf of the Collective Members, negotiated a settlement value that provides each Collective Member with *more* than their alleged unpaid wages using the IRS standard business mileage rate as the reimbursement rate (which Defendants' dispute should be applied). In addition, the Collective Members' attorneys' fees and costs were recovered as a separate item of recovery, which will maximize their recovery of unpaid wages. This is an excellent result considering there was a chance the drivers could have lost altogether. Compare *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, *12 (N.D. Ohio Mar. 8, 2010) (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average."). This factor supports the requested fee award.

8. **The attorneys' fees and costs are reasonable.**

The FLSA provides for a mandatory award of attorney's fees and costs to an employee who prevails on his or her claim. 29 U.S.C. §216(b). There is a strong presumption that the

lodestar rate figure, which is a presumed hourly rate, represents reasonable attorney fees. *Perdue v. Kenny A.*, 559 U.S. 542, 553–54 (2010). Courts in the Fifth Circuit use several factors to determine whether the attorney's fees are reasonable and necessary, including "(1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Here, the fees and costs are reasonable and necessary and should be approved.

*(1) The time and labor expended.* Here, Plaintiff's counsel has expended 49 hours on the case. "In addition to the hours worked directly on this case, Plaintiff's counsel, having established an expertise in 'pizza delivery driver' litigation, have expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. Southern Ohio Pizza, Inc.,* No. 1:17-cv-426, 2019 WL 275711, *5 (S.D. Ohio Jan. 18, 2019) (discussing the attorneys at Biller & Kimble's hours spent on similar pizza delivery driver cases).

Plaintiff's counsel's work on the case is not done. Their hours do not include the inevitable time they spend responding to inquiries from class members and administering the settlement process. *See, e.g., Arp*, 2020 U.S. Dist. LEXIS 207512, *19 ("The Court is aware that Class Counsel's work does not end at final approval. Class Counsel frequently spend additional time,

sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters.").

*(2) The novelty and difficulty of the questions raised; (3) The skill required to properly perform the legal services rendered; (9) The experience, reputation and ability of the attorney.* The questions raised in this case are novel and complex. As discussed above, this case involves a legal question regarding how to value vehicle expenses that is unsettled. Plaintiff's counsel's substantial experience and skill in this complex area has enhanced their representation of the class in this case. Plaintiff's counsel has litigated "pizza delivery driver cases all around the country with success, and has been counsel in a number of 'landmark' decisions in this area." *Young v. Rolling in the Dough, Inc.*, No. 1:17-cv-7825, 2020 WL 969616, *5 (N.D. Ill. Feb. 27, 2020); *see also Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *21 (S.D. Ohio May 17, 2021) ("The Court agrees that Biller & Kimble, LLC have proven themselves to be highly skilled advocates for pizza delivery drivers and other workers."). Specifically, Plaintiff's counsel is the only firm in the country that has successfully convinced a district court to hold that employers who do not maintain records and reimburse actual costs are required as a matter of law to reimburse at the IRS standard business mileage rate. *See Waters*, 538 F.Supp.3d 785; *Hatmaker* 2019 U.S. Dist. LEXIS 191790; *Parker,* 600 F. Supp. 3d 809, 814. This experience allowed Plaintiff's counsel to negotiate a positive result for the class.

Additionally, an analysis of the lodestar cross-check further supports the fee request. Plaintiff's counsel has incurred more in lodestar and will continue to incur fees in seeking approval and administering the settlement, than what will be recovered.

Plaintiff's counsel's rates are reasonable and have been approved in a number of similar pizza delivery driver under-reimbursement cases. *See, e.g., McGrothers v. GT Pizza, Inc.*, No. 2:20-cv-4050, 2022 U.S. Dist. LEXIS 228270, at *16 (S.D. Ohio Nov. 9, 2022) ("This Court previously — and repeatedly — has determined that their hourly rates are reasonable considering their experience, skill, and areas and level of expertise in the area of pizza delivery driver litigation."); *see also, e.g., Clark v. Pizza Baker, Inc. et al.*, No. 2:18-CV-157, 2022 U.S. Dist. LEXIS 198354, 2022 WL 16554651, at *6 (S.D. Ohio Oct. 31, 2022); *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2022 U.S. Dist. LEXIS 139084, 2022 WL 3048376, at *5, 13-14 (S.D. Ohio Aug. 2, 2022); *McConnell v. EUBA Corp.*, 2021 U.S. Dist. LEXIS 92836, 2021 WL 1966062, at *19; *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19.

Finally, the Settlement Agreement provides for a payment of $1,202.00 in costs, which was negotiated as a separate item of damages from the unpaid wages and liquidated damages. The costs were limited to court fees for admission and the cost of service, which were necessary for pursuing the claims asserted. These factors also favor approval.

*(8) The amount in controversy and the results obtained*. As discussed above, this settlement is a good result for the Collective Members, especially considering the legal and procedural uncertainties with proceeding to a judgment. As it stands, the Settlement amount constitutes approximately 118% of the total alleged unpaid wages for all potential Settlement Class members. This is an excellent result. *See, e.g., Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of

estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing Inc.*, 2010 U.S. Dist. LEXIS 20446, *20 (N.D. Ohio Mar. 8, 2010) (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average.").

*(5) The customary fee for like work; (12) Attorneys' fees awards in similar cases.* Courts in this Circuit and around the country often approve attorneys' fees of one-third of the common fund in class and/or collective actions. *See A review of fifth circuit precedent indicates a 30% benchmark fee is reasonable. See, e.g., Vela v. City of Houston,* 276 F.3d 659, 681 (5th Cir. 2001) (approving 30% fee award). Numerous courts have held that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee.[1]

*(4) The attorney's opportunity costs in pressing the instant litigation; (6) The attorney's expectations at the outset of the litigation; (7) The time limitations imposed by the client or circumstances; (10) The undesirability of the case within the legal community in which the suit arose; (11) The nature and length of the professional relationship between attorney and client.* Plaintiff believes these factors

---

[1] *See also*, *Arp*, 2020 U.S. Dist. LEXIS 207512, *19 (approving lodestar multiplier of 5.6 in FLSA class settlement); *In re Cardinal Health Inc. Sec. Litigs.,* 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (approval of lodestar multiplier of six); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (finding fee award equivalent to 4.5 to 8.5 lodestar multiplier "unquestionably reasonable"); *In re Rite Aid Corp. Secs. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (lodestar multiplier on the fee ultimately awarded was 6.96); *In re RJR Nabisco,* 1992 U.S. Dist. LEXIS 12702, 1992 WL 210138, at *5-6 (S.D.N.Y. Aug. 24, 1992) (approving lodestar multiplier of 6)*; Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (fee represented a lodestar approval of lodestar multiplier of six); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200 (S.D.N.Y. 1997) (approval of lodestar multiplier of 5.5); *In re Charter Communications, Inc., Sec. Litig., No. MDL 1506,* 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (approval of lodestar multiplier of 5.61); *In re Aremissoft Corp. Sec. Litig.,* 210 F.R.D. 109, 134-35 (D.N.J. 2002) (approval of a lodestar multiplier of 4.3); *In re Cendant Corp. Prides Litig.,* 51 F. Supp. 2d 537 (D.N.J. 1999), *vacated and remanded,* 243 F.3d 722 (3d Cir. 2001), *on remand,* No. 98-2819 (D.N.J. June 11, 2002) (approving percentage fee that resulted in a multiplier of 5.28); *Di Giacomo v. Plains All Am. Pipeline,* No. Civ.A.H-99-4137, Civ.A.H-99-4212, 2001 U.S. Dist. LEXIS 25532, 2001 WL 34633373, at *10-11 (S.D. Fla. Dec. 19, 2001) (approving percentage fee that resulted in multiplier of 5.3).

are neutral and therefore favor approval of the requested fee. Plaintiff's counsel did press this litigation as aggressively as they could have. Since the case is fee-shifting, Plaintiff's counsel could have incurred substantially more in fees than they will receive here but recommended this settlement because it was in the Collective Members' interest. Plaintiff's counsel's expectations at the outset of the case was that they would be paid a reasonable fee for their work, subject to Court approval. But, like in all of Plaintiff's counsel's cases, the settlement is not contingent on the Court granting their request for fees. There were no unique time limitations imposed by this case. The case is not undesirable in the legal community. And, finally, Plaintiff's counsel's relationship with the client is limited to this case. These factors are neutral at worst, and do not suggest that Plaintiff's counsel's requested fee is unreasonable.

**9.     The incentive payment is reasonable.**

Likewise, the Court should approve the $1,000 service award to Plaintiff as contemplated in the Settlement Agreement. None of the Collective Members would have recovered anything without Plaintiff's efforts. The service award is reasonable and should be approved. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1006 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"). This is especially true in employment litigation. *See Velez v. Majik Cleaning Servs., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."); *see also Ford*, 2022 U.S.

Dist. LEXIS 35052, at *13-15 (explaining why incentive award was proper). Plaintiff asks that the Court approve the service award to Plaintiff.

**10.  Conclusion**

For the reasons set forth above, Plaintiff respectfully requests the Court issue an order (1) granting final approval of the Settlement Agreement as fair, reasonable, and adequate; (2) approving the requested award of attorney's fees and costs; (3) approving the service award; (4) dismissing the action with prejudice; and (5) ordering the parties to carry out the remaining terms of the Settlement Agreement. Defendants do not oppose this request.

/s/Andrew Biller
Andrew R. Biller (pro hac vice)
Andrew P. Kimble (pro hac vice)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513)-202-0710
Facsimile: (614) 340-4620
abiller@billerkimble.com
akimble@billerkimble.com

www.billerkimble.com

*And*

Matthew R. Scott
Texas Bar No. 00794613
SCOTT LAW FIRM PLLC
900 Jackson Street, Suite 550
Dallas, Texas 75202
Telephone: (214) 965-9675
Facsimile: (214) 965-9680
*matt@mattscottlaw.com*

*Counsel for Plaintiff and the putative class*

## Certificate of Service

I HEREBY CERTIFY that on the 1st day of August 2023, I filed the foregoing electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means via email.

*/s/ Andrew Biller*
Andrew Biller